**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1394-WJM-NYW

TERESA BRIGANCE,

      Plaintiff,

v.

VAIL SUMMIT RESORTS, INC.,

      Defendant.

---

### ORDER GRANTING SUMMARY JUDGMENT

---

Plaintiff Teresa Brigance ("Plaintiff") brings this personal injury case against Defendant Vail Summit Resorts, Inc. ("Defendant" or "VSRI") pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332.  Now before the Court is Defendant's Motion for Summary Judgment.  (ECF No. 84.)  As explained below, the Court concludes that exculpatory waiver agreements to which Plaintiff agreed are enforceable and bar all of Plaintiff's claims, and Defendant's motion is therefore granted.

### I.  BACKGROUND

The following facts are undisputed, unless attributed to one party or to specific evidence cited.

Defendant VSRI operates Keystone Mountain Resort ("Keystone"), where Plaintiff and her family visited to ski in March 2015.  On March 23, 2015, Plaintiff took a ski lesson offered by VSRI at Keystone.  Prior to beginning ski lessons, participants were required to sign a liability waiver (the "Ski School Waiver" (ECF No. 84-2)).

Plaintiff's husband also purchased a lift ticket, which Plaintiff received and used to ride the Keystone lifts.  (ECF No. 84 at 4–5, ¶¶ 13–15, 19–20; ECF No. 99 at 4, ¶¶ 13–15, 19–20.)  The back of the lift ticket also contained a liability waiver (the "Lift Ticket Waiver").  (ECF No. 84-3.)  (The facts and evidence related to the Ski School Waiver and the Lift Ticket Waiver are central to the Court's analysis and are addressed in greater detail in Parts III.A–B, below.)

After initially riding a "magic carpet" surface lift, Plaintiff boarded the Discovery chairlift ("Discovery Lift").  As stated by VSRI, the Discovery Lift "is the chairlift [at Keystone] that services skiers and snowboarders learning to ski."  (ECF No. 84 at 5, ¶ 21.)  The Discovery Lift was the lowest chair to the ground at Keystone.  (ECF No. 99 at 8, ¶ 7; ECF No. 104 at 8, ¶ 7.)  The distance between the chair and the snow surface, as posted at the loading point, was 15 inches.  (ECF No. 84 at 5, ¶ 24.)

Plaintiff fell and unfortunately broke her leg while unloading from the Discovery Lift.  (*Id.* at 6, ¶ 34.)  More specifically, as she described in her deposition testimony, her ski boot "became wedged under the chair" as she was attempting to unload.  (ECF No. 84-4 at 34.)  She "stood up, but . . . couldn't get away from the chair because my ski boot was still wedged . . . . [a]nd then the chair catapulted me forward, and I heard my leg snap, and then I fell to the ground."  (*Id.*)

This lawsuit followed.  As alleged by Plaintiff and her expert, the low height of the Discovery Lift, created a "pinch point" at the unloading area.  (*See generally* ECF No. 99 at 18–20.)  Plaintiff claims that this condition, together with allegedly inadequate instruction she received from her ski school instructor regarding lift unloading, and the failure of the lift operator to stop the lift, caused her injuries.  (*See generally id.* at 1–2,

2

17–24.)  The Court previously dismissed certain of Plaintiff's claims.  (*See* ECF No. 38.)

Plaintiff's remaining claims against VSRI are brought pursuant to Colorado's Premises

Liability Act, Colo. Rev. Stat. § 13-21-115, and for negligent training, supervision, and

hiring of VSRI's employees (namely, the ski school instructor and the operator of the

Discovery Lift).  (*See* ECF No. 106 at 1–6.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem

Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49

(1986).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The

Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

The decisive arguments center on whether Plaintiff's claims are barred by the

terms of the Ski School Waiver and/or the Lift Ticket Waiver.  The Court sets out

background relevant to each before analyzing whether they are enforceable in these circumstances.

**A.     Ski School Waiver**

1.     <u>Language of Waiver</u>

The Ski School Waiver's language is extremely broad.  It includes a promise to "release and indemnify" VSRI, including for its own negligence, along with a promise "not to sue," as well as language which, on face, acknowledges and assumes the inherent risks of skiing, as well as "all additional risks and dangers," specifically listing the risks of "lift loading [and] unloading," as follows:

**RESORT ACTIVITY, SKI SCHOOL & EQUIPMENT
RENTAL WARNING, ASSUMPTION OF RISK, RELEASE
OF LIABILITY & INDEMNITY AGREEMENT**

**THIS IS A RELEASE OF LIABILITY & WAIVER OF
CERTAIN LEGAL RIGHTS**

1.  The person who is participating in the Activity (defined below) is referred to as a "Participant."  I am either the Participant or . . . the Participant's parent or legal guardian.  I understand that participating in ski and ride school, skiing, . . . and using the ski area facilities, including the lifts, for any purpose (the "Activity"), can be **HAZARDOUS AND INVOLVE THE RISK OF PHYSICAL INJURY AND/OR DEATH.**

2.  I understand the dangers and risks of the Activity and that the Participant, as a "skier" (as may be defined by statute or other applicable law), **ASSUMES ALL INHERENT DANGERS AND RISKS** of the Activity.

3.  I expressly acknowledge and assume all additional risks and dangers that may result in property damage, physical injury and/or death above and beyond the inherent dangers and risks of the Activity, including but not limited to: Falling; . . . following the direction of an instructor or guide;

4

equipment malfunction, failure or damage; improper use or maintenance of equipment; . . . loss of balance; . . . the negligence of Participant, Ski Area employees, an instructor . . . , or others; . . . lift loading, unloading, and riding; . . . **I UNDERSTAND THAT THE DESCRIPTION OF THE RISKS IN THIS AGREEMENT IS <u>NOT</u> COMPLETE AND VOLUNTARILY CHOOSE FOR PARTICIPANT TO PARTICIPATE IN AND EXPRESSLY ASSUME <u>ALL</u> RISKS AND DANGERS OF THE ACTIVITY, WHETHER OR NOT DESCRIBED HERE, KNOWN OR UNKNOWN, INHERENT OR OTHERWISE.**

4.  Participant assumes the responsibility of maintaining control at all times while engaging in the Activity and for reading, understanding, and complying with all signage, including instructions on the use of lifts.  Participant must have the physical dexterity and knowledge to safely load, ride and unload the lifts.

* * *

6. Additionally, in consideration for allowing the Participant to participate in the Activity, **I AGREE TO HOLD HARMLESS, RELEASE, INDEMNIFY, AND NOT TO SUE** Vail Resorts, Inc., The Vail Corporation . . . and all of their affiliated companies and subsidiaries, including the resort owner or operator . . . (each a "Released Party") **FOR ANY PROPERTY DAMAGE, INJURY OR LOSS TO PARTICIPANT, INCLUDING DEATH, WHICH PARTICIPANT MAY SUFFER, ARISING IN WHOLE OR IN PART OUT OF PARTICIPANT'S PARTICIPATION IN THE ACTIVITY, INCLUDING, BUT NOT LIMITED TO, THOSE CLAIMS BASED ON ANY RELEASED PARTY'S ALLEGED OR ACTUAL NEGLIGENCE OR BREACH OF CONTRACT AND/OR EXPRESS OR IMPLIED WARRANTY.**

(ECF No. 84-2 (emphasis in original).)

2.  <u>Agreement to Waiver</u>

VSRI has not produced a copy of the Ski School Waiver signed by Plaintiff, but

asserts that Plaintiff did, in fact, sign a waiver in the form produced before taking a ski

5

lesson and riding the Discovery Lift.  In support, VSRI puts forward evidence that any adult pursuing a ski lesson at Keystone was "required to sign the Release form," and that the form of the release VSRI has produced "was the only form used by VSRI for adult lessons . . . for the 2014–15 ski season."  (ECF No. 84 at 4, ¶¶ 10–11.)

The factual recitals in Plaintiff's brief deny that she signed the Ski School Waiver. (ECF No. 99 at 3, ¶ 7.)  However, Plaintiff's discovery responses reflected that she did sign a waiver.  (ECF No. 84-6 at 3 ("the ski school sign-up waiver is the only document I signed").)  Plaintiff's deposition testimony also reflected that she "signed the paperwork" presented to her before the lesson, which she thought was "a waiver" (ECF No. 84-4 at 20–21; ECF No. 99-1 at 5), that she "remember[ed] signing a kind of waiver that looked similar to" the (unexecuted) release produced by VSRI, and that the Ski School Waiver looked familiar.  (ECF No. 99-1 at 11; ECF No. 84-4 at 42–43.)  In other words, Plaintiff's evidence acknowledges that she signed a "ski-school signup" waiver, and she does not contest VSRI's evidence that all adults were required to sign the Ski School Waiver in the form produced by VSRI before taking ski lessons.[1]  (*See* ECF No. 99 at 3, ¶¶ 7–8.)

---

[1] Although Plaintiff's factual recitals state that she is "without information or knowledge to admit or deny" VSRI's practice of requiring all ski school participants to sign the Ski School Waiver in the form produced, a mere lack of personal knowledge is insufficient to demonstrate a genuine dispute at the summary judgment phase where Plaintiff has identified no contradictory evidence or factual inference.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*" (internal quotation marks omitted; emphasis in original)); *see also* Fed. R. Civ. P. 56(c)(1) (party asserting that a fact is genuinely disputed "must support the assertion by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact"); WJM Revised Practice Standards III.E.5. (as effective Dec. 1, 2014) (factual denials "shall be accompanied by a specific reference to admissible evidence . . . supporting the denial").

Moreover, and significantly, notwithstanding the absence of a signed copy of the document, Plaintiff does not argue that this issue presents a genuine dispute requiring trial. That is, consistent with Plaintiff's discovery response stating she signed "the ski school sign-up waiver," her summary judgment briefing does not argue that a genuine question remains for trial as to whether she did in fact sign the Ski School Waiver in the form produced or whether she agreed to its terms. Plaintiff argues only that the waiver is legally unenforceable on other grounds. (*See generally* ECF No. 99 at 9–27.) Since Plaintiff does not argue this issue, the Court treats it as conceded and concludes that there is no genuine dispute as to whether Plaintiff consented to the terms of the Ski School Waiver.[2]

## B.    Lift Ticket Waiver

### 1.    Language of Lift Ticket Waiver

The Lift Ticket Waiver, while less sweeping than the Ski School Waiver, also provides that the ticket holder (*i.e.*, Plaintiff) "agree[d] to ASSUME ALL RISKS, inherent or otherwise," and agreed "to hold the ski area harmless for claims to person or property," as follows:

---

[2] In passing, Plaintiff's brief does note that VSRI has not produced a signed copy of the Ski School Waiver—once in a section heading, and once in a one-sentence footnote, arguing Defendant "cannot argue that Plaintiff 'entered into' the release," although VSRI argues exactly that, based on the uncontested evidentiary record discussed above. (*See* ECF No. 99 at 9 & 15 n.1.) Plaintiff's undeveloped argument lacks evidence or authority on this point and is insufficient to establish a genuine dispute. *See United States v. Martinez*, 518 F.3d 763, 768 (10th Cir. 2008) ("But this contention appears only in a fleeting sentence at the conclusion of Mr. Martinez's opening brief, supported by no analysis or citation; without any such development, our precedent instructs us to deem the point waived and leave any such challenge for another day."); *see also United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief).

**HOLDER AGREES AND UNDERSTANDS THAT SKIING, SNOWBOARDING, AND USING A SKI AREA, INCLUDING LIFTS, CAN BE HAZARDOUS.**

**WARNING**

Under state law, the Holder of this pass assumes the risk of any injury to person or property resulting from any of the inherent dangers and risks of skiing and may not recover from the ski area operator for any injury resulting from any of the inherent dangers and risks of skiing. . . .  Holder agrees to **ASSUME ALL RISKS**, inherent or otherwise.  Holder agrees to hold the ski area harmless for claims to person or property.

(ECF No. 84-3 at 3 (emphasis in original).)

2.     Agreement to Lift Ticket Waiver

It is undisputed that Plaintiff's husband purchased the lift ticket and that Plaintiff received it and used it to ride the Discovery Lift.  (ECF No. 84 at 4, ¶¶ 13–14; ECF No. 99 at 4, ¶¶ 13–14; ECF 104 at 4.)

VSRI argues that, under traditional principles of Colorado law, the terms on the back of the lift ticket were an offer of contract, which Plaintiff accepted by receiving the ticket and using it to ski and to ride the lifts.  (ECF No. 84 at 14–15.)  VSRI argues that Plaintiff is therefore bound by the Lift Ticket Waiver and that, separate from the Ski School Waiver, it also bars Plaintiff's claims.  (*Id.* at 13–15.)  Plaintiff neither disputes the relevant facts nor counters VSRI's argument that she accepted the contractual terms of the Lift Ticket Waiver by skiing and riding the lifts.  (*See generally* ECF No. 99 at 4, ¶¶ 13–15; *id.* at 9–17.)  Given this concession, the Court concludes that Plaintiff agreed to the terms of the Lift Ticket Waiver and is bound by them, to the extent they

are otherwise enforceable.[3]

## C.   Enforceability of the Waiver Agreements

Plaintiff argues that both the Ski School Waiver and the Lift Ticket Waiver are unenforceable as against public policy.  (*See* ECF No. 99 at 9–17.)  Her arguments are directed at both waivers together, without distinguishing as between one or the other. (*Id.*)  The Court therefore analyzes both waivers together.

"Generally, exculpatory agreements have long been disfavored."  *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998).  Such agreements "are not necessarily void, however, as long as one party is not 'at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence.'"  *Id.* (quoting *Heil Valley Ranch v. Simkin*, 784 P.2d 781, 783 (Colo.1989) and W. Keeton et al., Prosser and Keeton on the Law of Torts § 68, at 482 (5th ed.1984)).  However, "[i]n no event will an exculpatory agreement be permitted to shield against a claim of willful and wanton negligence."  *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004).

In Colorado, "[t]he determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine."  *Riehl*, 960 P.2d at 136.  "In determining whether an exculpatory agreement is valid, there are four factors which a court must consider: (1) the existence of a duty to the public; (2) the nature of the

---

[3] Since Plaintiff does not contest her agreement to the terms of the Lift Ticket Waiver and, as analyzed below, makes no separate argument as to why the Lift Ticket Waiver is unenforceable, the application of the Ski School Waiver becomes a redundant issue.  In other words, because, as analyzed below, the Lift Ticket Waiver bars Plaintiff's claims, any dispute regarding whether the Ski School Waiver also bars her claims does not alter the Court's result.

service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Id.* (citing *Jones v. Dressel*, 623 P.2d 370, 375–76 (Colo. 1981)).  The parties' first dispute centers on the enforceability of the waiver agreements under these factors.  The Court considers each factor in turn.

      1.    <u>Duty to the Public</u>

 In considering duties to the public, Colorado law "distinguishe[s] businesses engaged in recreational activities, which are not practically necessary and with regard to which the provider owes no special duty to the public." *Chadwick*, 100 P.3d at 467 (citing *Jones*, 623 P.2d at 377).  "The [Colorado] supreme court has specified that no public duty is implicated if a business provides recreational services." *Stone v. Life Time Fitness, Inc.*, ___ P.3d ___, 2016 WL 7473806, at *3 (Colo. App. Dec. 29, 2016); *accord Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 949 (Colo. App. 2011) ("businesses engaged in recreational activities that are not practically necessary . . . do not perform services implicating a public duty").

Numerous prior cases in Colorado courts, and cases applying Colorado law in the federal courts, have confirmed that exculpatory waivers may be enforced in the context of recreational services and activities, including skiing, because such activities do not involve a duty to the public of a kind that would make enforcement of such contractual waivers against public policy.[4]  As one frequently-cited prior case put it:

---

[4] *See, e.g.*, *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1110 (10th Cir. 2002) (lift-served mountain biking; "a number of . . . cases specifically hold that a recreational activity does not involve a public duty" (citing *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474 (D. Colo.1992) (ski equipment rental))); *Lahey v. Covington*, 964 F. Supp. 1440, 1445

"Although skiing is a recreational activity enjoyed by many, by definition and common sense, it is neither a matter of great public importance nor a matter of practical necessity. Therefore, there is no public duty that prevents enforcement of [exculpatory] agreement[s]." *Bauer*, 788 F. Supp. at 474.  Thus, under well-established Colorado case law, no duty to the public prevents enforcement of an exculpatory liability waiver in this case.  *See supra*, note 4.

Plaintiff's arguments on this point do not overcome the substantial body of contrary case law.  Plaintiff points to the fact that in *Jones* the Colorado Supreme Court cited to *Tunkl v. Regents of the University of California*, 383 P.2d 441 (Cal. 1963), and Plaintiff then offers a lengthy analysis based on factors considered in *Tunkl*.  (*See* ECF No. 99 at 11–15.)  But *Jones* held that an exculpatory contract was enforceable in the context of a skydiving plane crash, contrasting the factors present there to the contrary holding reached in *Tunkl* in the context of a hospital-patient contract.  *Compare Jones*, 623 P.2d at 377 ("the contract . . . does not fall within the category of agreements affecting the public interest") *with Tunkl*, 383 P.2d at 447 ("the hospital-patient contract clearly falls within the category of agreements affecting the public interest").

_____

(D. Colo.1996) (whitewater rafting); *Brooks v. Timberline Tours, Inc.*, 941 F. Supp. 959, 962 (D. Colo. 1996) (snowmobiling); *Jones*, 623 P.2d at 377–78 (skydiving); *Squires v. Goodwin*, 829 F. Supp. 2d 1062, 1071 (D. Colo. 2011), *aff'd sub nom. Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867 (10th Cir. 2013) (blind skier; "Where, as here, the service provided is a recreational service and not an essential service, there is no unfair bargaining advantage."); *Potter v. Nat'l Handicapped Sports*, 849 F. Supp. 1407, 1409 (D. Colo. 1994) (handicapped ski racing;"[plaintiff] was injured while participating in a recreational activity. As such, by definition and common sense, it is neither a matter of great public importance nor a matter of practical necessity" (citing *Bauer*, 788 F. Supp. at 474)).

Moreover, as noted above, since *Jones* was decided in 1981 (and *Tunkl* in 1963), many Colorado cases have held that skiing and other recreational activities do not involve the kind of public interests that might render exculpatory agreements unenforceable, notwithstanding the various factors referenced by *Tunkl*.  *See supra*, note 4.  Plaintiff does not show how this case is distinguishable.

Plaintiff also does not cite to any controlling authority to the contrary.  Plaintiff cites *Rowan v. Vail*, 31 F. Supp. 2d 889, 896–97 (D. Colo. 1992), but that case held that skiing (specifically, "glide testing" before a race) was *not* a matter of public importance under *Jones*, although invalidating the agreement on grounds of ambiguous language not applicable here.  *Rosen v. LTV Recreation Dev., Inc.*, 569 F.2d 1117, 1122–23 (10th Cir. 1978), likewise concluded that the specific waiver language at issue "was ambiguous" and therefore did "not expressly provide" a waiver for the claims at issue there, but did not hold exculpatory terms unenforceable because of a public duty. *Rothstein v. Snowbird Corp.*, 175 P.3d 560, 565 (Utah 2007), applied a Utah statutory provision not at issue here.  Finally, *Bagley v. Mt. Bachelor, Inc.*, 340 P.3d 27, 43 (Ore. 2014), concluded that a ski area did "not provide an essential public service," while holding the release agreement unconscionable under Oregon precedents that do not control here.  In short, Plaintiff lacks legal support for her argument that this case involves a duty to the public that should render the waivers unenforceable under the *Jones* factors.[5]

---

[5] Plaintiff also argues that VSRI's Parent Company, Vail Corporation ("Vail") has, "tellingly," either "conceded or avoided" the issue of the enforceability of its release in recent cases before the Colorado Court of Appeals.  (ECF No. 99 at 13.)  But in the consolidated appeals of *Ciocian v. Vail Corp.*, 251 P.3d 1130, 1134–35 (Colo. App. 2010), and *Anderson v.*

2.     Nature of the Service Provided

The second *Jones* factor is the "nature of the service performed."  *Jones*, 623

P.2d at 375.  This analysis "involves an assessment of whether the activity can be

described as an 'essential service,'" which largely overlaps with the first factor.  *See*

*Hamill*, 262 P.3d at 949 (analyzing first and second factors together); *Potter*, 849 F.

Supp. at 1410; *Rowan,* 31 F. Supp. 2d at 897 ("This factor is linked to the first factor,

and . . . skiing is not an essential service").  Both parties brief these factors in tandem

(*see* ECF No. 84 at 11; ECF No. 99 at 15), and as detailed above, Colorado case law

establishes that recreational services, including skiing-related services, are not an

"essential service," and that exculpatory agreements are therefore not unenforceable

on this basis.  *See supra*, note 4.

3.     Whether the Contract Was Fairly Entered Into

The third *Jones* factor is "whether the contract was fairly entered into."  *Jones*,

623 P.2d at 376.  As with the previous factors, prior cases establish that because skiing

is "not an essential activity," Plaintiff was not "at the mercy" of VSRI's negligence when

she agreed to the exculpatory contract terms as a condition of skiing and taking a

lesson at Keystone.  *See Hamill*, 262 P.3d at 949–50.

Plaintiff argues that the waivers should be held unenforceable as "take it or leave

it" contract terms, or an improper "adhesion contract."  (*See* ECF No. 99 at 15–16.)

Again, Colorado law does not support Plaintiff's argument.  "Colorado defines an

---

*Vail Corp.*, 251 P.3d 1125, 1129–30 (Colo. App. 2010), the issue presented was the scope of the waiver, not its enforceability; specifically, the issue was Vail's statutory duty to adequately mark boundaries, and Vail conceded that its waiver did not supplant or limit those statutory duties.  The court thus did not address the enforceability of the exculpatory agreement.

adhesion contract as 'generally not bargained for, but imposed on the public *for a necessary service* on a take it or leave it basis.'" *Bauer*, 788 F. Supp. at 474 (quoting *Jones*, 623 P.2d at 374) (emphasis added).  "However, printed form contracts offered on a take it or leave it basis, alone, do not render the agreement an adhesion contract." *Id.* at 474–75.  *Jones* held that the exculpatory contract there (relating to skydiving), was not an unenforceable adhesion contract "because the service provided . . . was not an essential service."  *Jones*, 623 P.2d at 377–78.  The numerous cases that have found exculpatory agreements valid as to recreational services since *Jones* have reached the same conclusion, including in ski cases.  *See, e.g.*, *Bauer*, 788 F. Supp. at 475 ("[D]efendants' recreational services were not essential and, therefore, they did not enjoy an unfair bargaining advantage.  Nor does it matter that all ski rental shops . . . required the same release.  Plaintiff could choose not to rent this equipment . . . . Therefore . . . the exculpatory agreement was fairly entered into[.]"); *Squires*, 829 F. Supp. 2d at 1073 (skiing was "not an essential service, and thus there is no unfair bargaining advantage"); *Mincin*, 308 F.3d at 1111 ("as mountain biking is not an essential activity . . . [plaintiff] did not enter into the contract from an inferior bargaining position"); *Hamill*, 262 P.3d at 949 (same, as to horseback riding).

Plaintiff cites only *Jones*, 623 P.3d at 374, and *Rosen*, 569 F.2d at 1123, to support her counter-argument.  (*See* ECF No. 99 at 15–16.)  These citations are unavailing, since *Jones* held an exculpatory agreement enforceable in a recreational context, and *Rosen* (decided before *Jones*), held only that the court would not imply provisions into an adhesion contract with ambiguous terms, not that the "take it or leave

14

it" nature rendered the contract unenforceable.[6]

### 4.   Clear Intention of the Parties

Regarding the final *Jones* factor, Plaintiff argues that "the release[7] is ambiguous because there is a conflict between the risks delineated by the [Colorado] Ski Safety Act and the Release's language as to what risks are assumed."  (ECF No. 99 at 16.)

To the extent Plaintiff argues that the release is contrary to, or precluded by, any Colorado statutory provisions, that argument is distinct from the analysis required under the fourth *Jones* factor.  The relevant inquiry is "whether the intention of the parties is expressed in clear and unambiguous language."  *Jones*, 623 P.2d at 376.  Courts analyzing this factor will "examin[e] the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions."  *Chadwick,* 100 P.3d at 467; *see also Rowan*, 31 F. Supp. 2d at 899 ("If the plain language of the waiver is clear and unambiguous, it is enforced as a matter of law").

Plaintiff's argument does not point to any ambiguity in the plain language of the waivers, or to any confusion as to the intention of the parties, as expressed in the waiver language, instead alleging a conflict with Colorado statutes.  (*See* ECF No. 99 at 16–17.) The Ski School Waiver prominently stated "this is a release of liability [and a] waiver of

---

[6] Plaintiff's quotation to the statement that "[t]he mere fact that [the skier] signed the slip . . . doesn't necessarily relieve the defendant in this case of negligence" (ECF No. 99 at 16 (quoting *Rosen*, 569 F.2d at 1122)), is not a quotation to the Tenth Circuit's holding, but to language used by the trial court (evidently in a bench ruling), which the Tenth Circuit explained "was referring to the ambiguous language" used in the contract.  *Rosen*, 569 F.2d at 1122.

[7] The Court assumes that Plaintiff's argument is directed at both the Ski School Waiver and the Lift Ticket Waiver.

certain legal rights." (ECF No. 84-2 at 1.)  It went on to include an express

acknowledgment and release of "all inherent dangers and risks," and "all additional risks

and danger," expressly including "lift loading, [and] unloading," and further included a

contractual agreement to "hold harmless, release, indemnify, and not to sue." (*Id.*)  The

Court finds no ambiguity or confusion in the plain language of this agreement.  Likewise,

the Lift Ticket Waiver, while not as specific as the Ski School Waiver, included clear

language that "[Plaintiff] agree[d] to ASSUME ALL RISKS, inherent or otherwise," and

"agree[d] to hold the ski area harmless." (ECF No 84-3 at 3.)  Plaintiff does not identify

any lack of clarity with this language, and the Court finds none, concluding the language

of both agreements clearly expressed the parties' intentions and can be enforced.  *See*

*Mincin*, 308 F.3d at 1113 (finding no ambiguity in an agreement that "cover[ed] 'any and

all claims I might state . . . including those claims based on negligence or breach of

warranty.'  The agreement bar[red] [the plaintiff] from bringing suit for any and all claims,

then ma[de] clear that . . . negligence claims [were] contained within that prohibition.

There is nothing ambiguous about this portion of the agreement.").

Finally, Plaintiff's reliance on *Rowan* on this point is again unavailing, since the

ambiguity there arose from language of that specific agreement, language which is not

present here.  In *Rowan*, the agreement included a first-person singular release of "any

and all claims *I* might state" which the court found ambiguous when applied to claims

brought by the estate of the individual who signed the agreement. 31 F. Supp. 2d at

899.  The agreement also was ambiguous as to "whether the release intend[ed] to

exculpate Vail from all claims or rather those claims that result in injuries inherent to

skiing under the [Colorado] Ski Safety Act." *Id.* at 899–900.  No similar ambiguity is identified in the waivers here.  The Ski School Waiver applied to Plaintiff, as the "Participant," as applicable to her own claims and injuries, and it applied to "all inherent dangers and risks," and "expressly acknowledge[s] and assume[s] all additional risks and dangers . . . including . . . . lift loading, [and] unloading."  (ECF No. 84-2, ¶¶ 2 & 3.) The Lift Ticket Waiver applied to the "Holder of this pass," here, Plaintiff; it included her agreement to "assume all risks, inherent or otherwise."  (ECF No. 84-3 at 3.)  Thus, the ambiguities identified in *Rowan* are not present in the waiver language here.

     5.   <u>Colorado Statutory Provisions</u>

Plaintiff also argues that "Defendant's release attempts to circumvent Colorado law," specifically, by seeking to release liability for "all risks and dangers . . . inherent or otherwise," a release broader than for only the "inherent dangers of skiing," as that phrase is used in the Colorado Skier Safety Act, Colo Rev. Stat. §§ 33-44-101 *et seq*. (ECF No. 99 at 16.)  Plaintiff cites to the Skier Safety Act's definition of the "inherent dangers and risks of skiing," which includes the statement that "[n]othing in this section shall be construed to limit the liability of the ski area operator for injury caused by the use or operation of ski lifts."  Colo. Rev. Stat. § 33-44-103(3.5).

In general terms, the Act prescribes certain duties of ski areas and of skiers. *See generally* Colo. Rev. Stat. §§ 33-44-107, -108, & -109.  It also provides that violation of any of those statutory provisions presumptively constitutes negligence.  *See* Colo. Rev. Stat. § 33-44-104.  Colorado has also enacted the Passenger Tramway Safety Act, Colo. Rev. Stat. §§ 25-5-701 *et seq.,* which establishes a passenger

tramway safety board, gives that board certain regulatory and enforcement powers, and sets relevant standards for the operation of "tramways," including chairlifts.  *See generally* Colo. Rev. Stat. §§ 25-5-701, -702(4), -703, & -706.  However, Plaintiff identifies no statutory provision or other authority which prevents skiers and ski areas from entering into exculpatory contracts or waivers which go beyond the terms of the Skier Safety Act, or which contractually limit a ski area's liabilities as to matters not governed by the Act.

The question of what duties and claims arise under the statutes is separate from the issue of what duties (or here, waivers and  indemnities) the parties may take on as a matter of contract.  Here, Plaintiff does not have any pending claims for breach of the Skier Safety Act, or of the Passenger Tramway Safety Act.  Her claims are for negligent training/supervision of VSRI employees, and a statutory claim under Colorado's Premises Liability Act.  (*See* ECF No. 38 at 4 (dismissing negligence *per se* claim brought pursuant to the Act because "Plaintiff fails to identify any requirement of . . . the Skier Safety Act [] which has been violated").)  Plaintiff does not identify authority supporting the proposition that the mere existence of the Skier Safety Act and/or the Passenger Tramway Safety Act precludes private parties from contractually waiving either statutory or non-statutory claims.  *Cf. Mincin*, 308 F.3d at 1111 ("The fact that the Colorado legislature has limited landowner liability in the contex[t] of . . . skiing is relevant to the question of whether landowner liability might be limited . . . *absent a contract.*  It is irrelevant, however, to . . . whether an exculpatory agreement is enforceable" (emphasis in original)).

To the extent Plaintiff argues, in very general terms, that these statutes embody a general "public policy" regarding skier safety or protection of the public interest (*see* ECF No. 99 at 12, 16–17), she cites no authority reflecting that such public policy renders exculpatory contracts invalid, other than arguing the public duty factor under *Jones*, resolved above.  Put another way, notwithstanding the several cases cited above which have enforced exculpatory waivers in the context of ski areas, Plaintiff does not cite any case to have held that any provision of the Skier Safety Act makes such agreements unenforceable.

Morever, the Court previously dismissed Plaintiff's negligence *per se* claims, which she argued arose from standards embodied in the the Skier Safety Act and the Passenger Tramway Safety Act.  (*See* ECF No. 38 at 3–5.)  Although dismissal was without prejudice, Plaintiff never amended her pending claims to cure the deficiencies which led to dismissal.[8]  Plaintiff therefore does not have any pending claims under

---

[8] Plaintiff's opposition to summary judgment requests that her negligence *per se* claim be "revived," on the basis of alleged violations of the Colorado Passenger Tramway Safety Act. (*See* ECF No. 99 at 24–27.)  For numerous reasons, the Court will not entertain this request. *First*, the request, which is effectively a motion to amend Plaintiff's claims, was improperly included in Plaintiff's response to VSRI's motion for summary judgment, not filed as a separate motion.  *See* D.C.COLO.LCivR 7.1(d) (as effective Dec. 1, 2015) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document.").  *Second*, Plaintiff nowhere cites or makes any argument under Federal Rule of Civil Procedure Rule 15(a), nor under any other authority governing either amendment of claims or reconsideration of the Court's previous dismissal.  *See* Fed. R. Civ. P. 15(a)(2).  *Third*, Plaintiff merely re-argues the exact same issue previously decided in the Court's dismissal order, namely, that an actionable claim should arise under certain sub-parts of Colorado Revised Statutes § 25-5-706, which provides for disciplinary action against operators of passenger tramways.  (*See* ECF No. 99 at 25–26.)  The Court already held that these exact provisions "d[o] not provide a statutory standard of care which is adequate to support Plaintiff's claim for negligence *per se*."  (ECF No. 38 at 5 (citing *Hendrickson v. Doyle*, 150 F. Supp. 3d 1233, 1239 (D. Colo. 2015).)  *Fourth*, Plaintiff's request is entirely untimely.  The Court dismissed Plaintiff's negligence *per se* claim on March 11, 2016.  Plaintiff filed her summary judgment opposition brief, first requesting that this claim be "revived," on July 29, 2016, more

either the Skier Safety Act or the Passenger Tramway Safety Act.  In short, Plaintiff's

arguments related to these statutes have no effect on the enforceability of either the Ski

School Waiver or the Lift Ticket Waiver to bar Plaintiff's pending claims.

**D.    Application of the Waivers to Plaintiff's Claims**

As noted above, the broad language of Ski School Waiver stated that Plaintiff will

"hold harmless, release, [and] indemnify" VSRI and that she agreed "not to sue."  (ECF

No. 84-2.)  Plaintiff also assumed "all risks and dangers, whether or not described . . .

known or unknown," and the Ski School Waiver further included express assumption of

the risk of unloading from a lift.  (*Id.*)  The Lift Ticket Waiver similarly included an

agreement to "assume all risks, inherent or otherwise" and to "hold the ski area

harmless for claims to person or property."  (ECF No. 84-3 at 3.)

VSRI argues that Plaintiff's pending claims fall within the broad scope of these

waivers, and that enforcing either waiver must bar all of Plaintiff's claims.  The Court

agrees, and Plaintiff makes no counter-argument to show how any of her claims would

fall outside the scope of the waivers' language, arguing only that the waivers should not

be enforced, and that genuine factual disputes remain as to the merits of her claims.

(*See* ECF No. 99 at 9–24.)  Given Plaintiff's concession, the Court readily concludes

that all of Plaintiff's pending claims fall within the scope of the waivers.  Since the Court

has concluded these waivers are enforceable, summary judgment is appropriate

against Plaintiff on this basis, as to all remaining claims.  The Court therefore need not

---

than two months after the close of discovery.  (*See* ECF No. 86 at 3; ECF No. 99.)  Plaintiff
does not offer any justification for "reviving" a claim at this late stage of litigation, nor does she
explain why she did not timely seek to amend her pleading while discovery was ongoing.

reach any of the parties' remaining arguments.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Defendant's Motion for Summary Judgment (ECF No. 84) is GRANTED;

2.  Summary Judgment is GRANTED in favor of Defendant, Vail Summit Resorts, Inc., on all pending claims;

3.  The Final Trial Preparation Conference scheduled for February 21, 2017, and the jury trial scheduled to commence March 6, 2017, are VACATED;

4.  All other pending trial-related motions—including Defendant's Motion to Strike and Exclude Untimely or Undisclosed Exhibits and Expert Witnesses (ECF No. 110); Defendant's Motion to Exclude the Expert Testimony of Christopher Wall (ECF No. 119); Defendant's Motion to Exclude the Expert Testimony of Dr. David Zierk (ECF No. 120), and Plaintiff's Unopposed Motion To Restrict Public Access To The Expert Report of Christopher Wall (ECF No. 126) — are DENIED AS MOOT;

5.  The Clerk of Court shall enter judgment in favor of Defendant on all claims and shall terminate this case; and

6.  Defendant shall have its costs.

Dated this 13th day of January, 2017.

BY THE COURT:

William J. Martínez
United States District Judge